UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


JORGE D.,

    Plaintiff,

                          Case No. 2:19-cv-00013

        v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social
Security Administration,

    Defendant.


**OPINION AND ORDER**

     Plaintiff Jorge D. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting review of the Commissioner's decision to deny his application for supplemental security income (SSI). Now before the Court is Plaintiff's motion for judgment reversing the decision of the Commissioner, and the Commissioner's motion for judgment affirming the same. For the reasons set forth below, Plaintiff's motion is **granted**, the Commissioner's motion is **denied**, and the matter is **remanded** for reconsideration of the evidence.

**BACKGROUND**

**I.    PROCEDURAL HISTORY**

     Plaintiff Jorge D. filed an application for SSI on May 29, 2015, alleging an onset date of April 2, 2005. **Administrative**

**Record [hereinafter AR] 16.** The claim was initially denied on September 1, 2015, and Mr. D. filed a request for reconsideration on November 3, 2015. **AR 16.** Mr. D.'s request was denied on reconsideration on December 11, 2015. **AR 16.** He filed a request for a hearing on January 6, 2016, which was granted, taking place before Administrative Law Judge (ALJ) Dory Sutker on May 9, 2019. **AR 13-34.** Mr. D. received an unfavorable decision on July 5, 2017. **AR 13-34.** He filed an appeal with the Appeals Council on August 2, 2017. **AR 588-93.** The Appeals Council denied review on September 19, 2017. **AR 1-5.**

On October 13, 2017, Mr. D. filed a complaint in federal district court, alleging that the ALJ had failed to provide him with a complete record on which her decision was based. **AR 2217.** The district court remanded the case to the Appeals Council with instructions "to remand the case to an administrative law judge who will be instructed to proffer the post hearing addition evidence to Plaintiff, consider all the evidence in the claims file, offer Plaintiff an opportunity for a new hearing, and issue a new decision." **AR 2222.** On May 31, 2018, the Appeals Council remanded the case accordingly. **AR 593.**

On October 16, 2018, ALJ Sutker held another hearing with the amended record. She issued a partially favorable decision on November 1, 2018, finding that Plaintiff was not disabled between the time of his May 2015 SSI application date through

2

November 1, 2018. However, she found that he did become disabled under the Act as of November 1, 2018 when his age category changed to that of an individual closely approaching advanced age. **AR 2130.** Jorge D. now appeals this decision.

Mr. D. had made prior applications for Title II disability insurance and Title XVI SSI benefits on July 6, 2012, with an alleged onset date of April 2, 2012. **AR 394-405**. Both of these claims were denied on June 10, 2014. **AR 163-183**.

## II.   PERSONAL AND MEDICAL HISTORY

Jorge D. was born on January 2, 1969 and is 51 years old. From 1996 to 2005, he worked as a construction worker. Some of his daily tasks during his employment included lifting heavy items, throwing away debris, and setting up scaffolds. **AR 453-454.** From January 2007 to May 2010, Jorge D. was incarcerated at the Southern State Correction Facility in Vermont, where he complained of foot and back pain. **AR 594-1260.** He was unable to kick during the facility's group exercise program, **AR 1072**, and a physician at the facility found him unsuitable for work camp until his foot problem was addressed, **AR 755**.

On January 19, 2011, Jorge D. was diagnosed with chronic plantar fasciitis by Dr. Edward P. Smith. **AR 1270**. Dr. Smith confirmed this diagnosis at subsequent appointments, prescribing custom orthotics on September 15, 2011. **AR 1264, 1269**. On March 26, 2012, Dr. Lewis observed that Jorge D.'s plantar fasciitis

was not improving. **AR 1262, 1271**. Dr. Lewis made the same observation on August 23 and October 25, 2012, also noting at the latter appointment that Jorge D. had not been wearing his orthotics full-time. **AR 1272**. On August 23, 2012, Dr. Smith completed a Training and Employment Medical Report for GA and 3Squares VT attesting that Jorge D.'s chronic plantar fasciitis was expected to last six months, and that he could not work during that time. On September 19, 2012, Jorge D. reported having chronic plantar fasciitis, depression, and severe anxiety in a Social Security Administration Function Report. **AR 458–465**.

On October 26, 2012, Jorge D. underwent a consultive psychological evaluation by Dr. Gregory Korgeski. Jorge D. scored 27 out of 30 points on a Mini-Mental Status exam. Dr. Korgeski observed that his symptoms "tend to cluster around anxiety with partial criteria for several conditions including panic disorder [and] agoraphobia, but the triggers seem more akin to anxiety associated with past traumatic disorders." **AR 2063**. Dr. Korgeski's assessment under the DSM IV multiaxal evaluation criteria was: "Axis I: Anxiety disorder, NOS (features of PTSD, panic disorder); depression (NOS); history of cocaine dependence in extended full remission. Axis II: Antisocial personality features vs. disorder. Axis III: reports plantar fasciitis." **AR 2062.**

On November 15, 2012, psychiatrist Dr. Haines performed an Initial Psychiatric Assessment of Mr. D., observing anxious and depressed mood, anxious affect, and impairment of attention and concentration. **AR 1307-11**. Dr. Haines diagnosed him with panic disorder with agoraphobia and depression (NOS), and assigned him a Global Assessment of Functioning score of 48.

From December 12, 2012 to January 23, 2013, Paul Rodrigue LMFT at the Brattleboro Retreat counseled Jorge D. on five occasions. On December 19, 2012, Rodrigue observed symptoms of depression and anxiety with functional limitations severe enough to meet the criteria of the Social Security Listings for Affective Disorders and Anxiety-related disorders. **AR 1327, 1328.**

On March 12, 2013, Jorge D. complained of bilateral heel pain to podiatrist Kimberly Liewbow, DPM. He was diagnosed with plantar fasciitis / heel spur syndrome, bilateral; peroneal brevis tendonitis bilateral, and pain in limb. He was given a lidocaine injection in each heel. **AR 1364**. On March 22, 2013, Jorge D. had a physical therapy evaluation at Brattleboro Memorial Hospital. **AR 1365-70.** He reported no improvement in functioning or foot pain upon his release. **AR 1748-50.**

Jorge D. received an MRI of his lumbar spine, which showed an L4-L5 degenerative disc with disc bulge and facet arthropathy as well as L5-S1 degenerative disc disease with disc bulge and

facet arthropathy. **AR 1729**. An MRI of Jorge D.'s feet did not show sufficient evidence to establish plantar fasciitis. **AR 1730**.

Jorge D. was next evaluated by Dr. Hinenin and Wendy King, PA-C at Pioneer Spine and Sports Physicians. The evaluating team observed an antalgic gait, a limp in the left leg, moderate plus pes panus bilaterally, and intolerance to touch on the surfaces of his mid and hind foot. **AR 1484**. He demonstrated a positive straight leg raise on the right side. **AR 1484**. Jorge D. was assessed to have lumbago, myalgia and myositis, and neuritis or radiculitis thoracic or lumbrosacral unspecified. **AR 1482-1450**.

On October 1, 2013, Dr. Haines offered his opinion on Jorge D.'s conditions in the context of the Social Security Listing 12.04 (Affective disorders) and 12.06 (Anxiety related disorders). **AR 1573-75**. He found that Jorge D. displayed 5 of the Part "A" criteria for Listing 12.04 and 7 of the Part "A" for Listing 12.06. **AR 1573-75**. Among the Part "B" criteria, he found moderation in activities of daily living, moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence and pace, and repeated episodes of decompensation, each of extended duration. **AR 1573-75**. From September 27, 2013 to November 1, 2013, Jorge D. continued to see Paul Rodrigue, LMFT. **AR 1556-1571**. He reported anxiety and depression. **AR 1556-71.**

Between August and November 2013, Dr. Eric Pofcher saw Jorge D. on four occasions at Brattleboro Primary Care. **AR 1519-39**. In a letter written on November 15, 2013, Dr. Pofcher observed that "Patient is totally disabled. Among his limitations, he is unable to walk very far, unabl[e] to sit and unable to stand without rapid development of pain." **AR 1585, 1588**. On January 24, 2014, Dr. Pofcher signed a Temporary Medical Deferment, finding Jorge D. unable to perform physical work activities for an 8 hour day. **AR 1587.**

On February 4, 2014 and March 3, 2014, Jorge D. went to a Pain Clinic consultation at Dartmouth Hitchcock Medical Center. He reported chronic knee, bilateral foot and lumbar back pain, and reported slight relief with opioid medication. **AR 1681-96**. Jorge D. was referred to physical therapy and given a TENS unit to manage pain, along with a continued home exercise program. **AR 1681-96**. He was also seen at the Brattleboro Retreat Pain Clinic on February 10, 2014 for foot pain from plantar fasciitis and secondary knee and back pain related to an abnormal gait. **AR 1753-54.** On February 18, 2014, he was admitted to the Chronic Pain Program at the Brattleboro Retreat. **AR 1753-54.**

On February 20, 2014, Dr. Haines completed a questionnaire regarding Jorge D.'s health conditions. He indicated that Jorge D. had diagnoses of post-traumatic stress disorder with secondary anxiety and depression, ADHD, panic with agoraphobia,

and chronic physical pain in the feet and legs. **AR 1590.** He indicated that Jorge D.'s condition would adversely affect his ability to maintain a job or work to a similar degree. **AR 1590.** On April 16, 2014, Jorge D. testified at a hearing before ALJ Thomas Merrill in which he recounted his extensive problems with sitting, standing, and walking. **AR 69-79.**

On September 16, 2014, Jorge D. had an initial visit with Dr. Blofson at Maplewood Family Practice, in which he presented with bilateral foot pain, back pain, and knee pain. **AR 1697-99.** Concerned about his high dose of narcotics, Dr. Blofson began to taper his narcotics medications on December 22, 2014. **AR 1729.**

Jorge D. had another evaluation by Dr. Haines on November 6, 2014. Dr. Haines observed that the patient exhibited a generalized anxiety disorder, depressive disorder, and attention deficit hyperactivity disorder. **AR 1772-77.** Mr. D. continued to see Dr. Haines from November 6, 2014 to January 12, 2016, exhibiting depression, anxiety, panic with agoraphobia, and ADHD. **AR 1949-75, 1954.** Dr. Haines set a goal of stabilizing the patient's anxiety while increasing his ability to function on a daily basis.

On March 12, 2015, Jorge D. was assessed by Heather Humphrey-LeClair, LCMHC, LADC, at the Brattleboro Retreat. Mr. D. met the criteria for cocaine dependence in sustained full remission and cannabis abuse, and also reported previous co-

occurring diagnoses of ADHD, chronic pain, panic attacks, and severe anxiety. **AR 1755-63, 1796-1811.** On March 27, 2015, Jorge D. scored 42 on a Beck Depression inventory, indicating moderate to severe depression. **AR 1782.** His clinician set a goal of reducing the frequency and intensity of his anxiety "so that daily functioning is not impaired." On June 2, 2015, Dr. Haines described Jorge D.'s mood as anxious and discouraged. **AR 1788.**

On June 19, 2015, Jorge D. returned to see John Murphy, D.O., at the Brattleboro Retreat Pain Clinic. His physical exam demonstrated extreme tenderness of the arches, extremities not within normal limits, and evidence of plantar fasciitis. **AR 1767-69.** On July 2, 2015, Jorge D. was diagnosed with chronic pain syndrome by clinical psychologist Dr. James Benton. **AR 1827.** Jorge D. attended a Mindfulness Group for Chronic Pain at the Brattleboro Retreat from July 9 to December 3, 2015.

James Carew, LICSW, had seen Mr. D. in psychotherapy 21 times from March to August 2015. **AR 1823-25.** In a treatment summary dates August 3, 2015, Mr. Carew reported that Mr. D. presented with physical pain that caused him difficulty walking and led him to use a cane. **AR 1823-24.** Jorge D. also showed overwhelming anxiety that limited his ability to leave home, as well as limited mobility and lack of access to transportation that led him to miss medical appointments. **AR 1823-24.** Mr. Carew

assigned DSM-IV diagnoses on Axis I of Agoraphobia and PTSD, and a GAF score of 45 on Axis V. **AR 1825.**

On November 13, 2015, Jorge D. completed a Social Security Administration Function Report describing his difficulties in sitting, standing, walking, and carrying out activities in daily life. **AR 2380-87**. On November 25, 2015, Dr. Carew attested that Jorge D. had seen him in psychotherapy 38 times since March 6, 2015, and that the patient had difficulty with mobility, struggled with anxiety and depression, and had difficulty leaving home. He diagnosed him with agoraphobia and PTSF with a GAF score of 45. **AR 1882-85.**

On December 10, 2015, Dr. Geoffrey Knisely of Disability Determination Services found that Mr. D. had the physical capacity to perform full time work at the light exertion level with no limitations, and that he was therefore not disabled. **AR 206, 209.** On December 11, 2015, Dr. Howard Goldberg of Disability Determination Services completed a Psychiatric Review Form for Jorge D., finding that he had moderate limitations in most areas of mental functioning, but a "markedly limited" ability to interact with the general public. **AR 207-208.** Dr. Goldberg concluded that Jorge D. was psychologically capable of maintaining concentration and pace for 2 hour periods of time over an eight hour work day throughout a typical week. **AR 207-208.**

Jorge D. had an initial occupational health visit with Dr. Alexandra Dulude on May 27, 2016. Dr. Dulude concluded that the patient's limitations did not meet the Social Security medical criteria for Listings 1.02 (Major dysfunction of a joint) or 1.04 (Disorders of the spine), but he may meet the requirements for Depression and PTSD depending on the opinion of his mental health provider. **AR 1996-2002.** Jorge D. attended a residual functional capacity (RFC) assessment to further document his functional limitation on August 4, 2016. **AR 2043-47.** Objective testing showed that Mr. D. had a sitting tolerance of 33 minutes and a dynamic standing tolerance of 20 minutes. **AR 2043-51.** He scored in the 1st percentile in the Crawford Small Parts Test and performed most tasks slowly. A follow-up residual functional capacity assessment with Dr. Huyck on November 7, 2016 showed Mr. D. to have impairment in fine motor coordination, ambulation, lifting, squatting, stair climbing, standing tolerance, pace, and balance. **AR 2048-51.**

Dr. Haines completed a Mental Impairment Questionnaire for Jorge D. on January 24, 2017. **AR 2055.** Dr. Haines diagnosed Jorge D. with recurrent major depression, panic disorder with panic attacks, generalized anxiety disorder, and ADHD; Dr. Haines further attested to the patient's moderate restrictions in daily activities, extreme difficulties in maintaining social functioning, marked to extreme difficulties maintaining

11

concentration, persistence, and pace, and 1-2 episodes of decomposition within a 12-month period of at least 2 weeks duration each. **AR 2055.** Dr. Haines wrote that Mr. D. does not have sufficient ability to focus and concentrate to stay on task at the job. **AR 2055.**

**III. THE ALJ'S DECISION**

A. <u>Overview of the Five-Step Sequential Evaluation Process</u>

The Social Security regulations provide a five-step sequential process for evaluating disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's RFC, which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

B. The ALJ's Analysis of Mr. D.'s Case

In this case, the ALJ first found that Mr. D. had not engaged in substantial gainful activity since May 29, 2015, the date of his application. **AR 2114**. At step two, the ALJ concluded

that Mr. D. has the following severe impairments: degenerative disc disease; bilateral peroneal brevis tendonitis; anxiety disorder unspecified; depressive disorder unspecified, and attention deficit hyperactivity disorder. **AR 2114**.

At step three, the ALJ concluded that Mr. D.'s severe impairments did not meet or medically equal a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. **AR 2115.** With regard to major joint dysfunction, ALJ Sutker found that the record did not establish Mr. D.'s inability to ambulate effectively or to perform fine and gross movements. **AR 2115**. With respect to spine disorders, the ALJ found that the record did not establish a compromised nerve root, spinal cord compression, limited spinal motion, motor and / or sensory and reflect loss, or a positive straight leg test. **AR 2115.**

Finally, the ALJ concluded that the claimant's mental impairments did not meet the criteria of Listings 12.04 and 12.06. **AR 2115.** First, she found that the claimant had moderate limitations with respect to understanding, remembering, and applying information. **AR 2116.** The ALJ came to this conclusion based on reports in the record that Mr. D. arranges medical rides prior to his appointments, reads, uses the internet, manages his personal finances, prepares simple meals, and uses public transportation. **AR 2116.** Next, ALJ Sutker found that Mr. D. has moderate to marked limitations in interacting with

14

others. **AR 2116.** While noting Mr. D.'s social isolation and inability to tolerate crowds and other social stressors, the ALJ pointed to his ability to maintain friends, take public transportation, maintain a romantic relationship, and have long-term treating relationships with his psychiatrist and primary care physician as evidence that his difficulties fall short of extreme. **AR 2116.** With regard to concentration, persistence, or pace, the ALJ concluded that Mr. D. has moderate difficulties. **AR 2116.** While the ALJ acknowledged claims of difficulty concentrating and completing tasks, the ALJ also noted that Mr. D.'s medical record offers no evidence of cognitive impairment or thought disorder, and he is able to carry out daily tasks such as cooking, shopping, or managing his medications. **AR 2116.** Finally, the ALJ found moderate limitations as for adapting and managing oneself. She noted that while Mr. D. struggles with issues related to agoraphobia, he has been able to socialize with his friends, maintain his hygiene, and use public transportation. **AR 2116-17.**

In support of her findings regarding Jorge D.'s physical condition, the ALJ gave significant weight to the opinions of state agency reviewers Dr. Leslie Abramson and Dr. Geoffrey Knisely, and some weight to the opinions of Dr. Alexandra Dulude. **AR 2120-21.** She gave no weight to the functional capacity assessment carried out by Gregory Morneau, OT, or to

the opinions of Dr. Tony Blofson, who was Mr. D.'s primary care provider. **AR 2121.**

In assessing Jorge D.'s mental RFC, the ALJ allotted significant weight to the opinions of state agency consultants Joseph Patalano, Ph.D. and Howard Goldberg, Ph.D. The ALJ gave lesser weight to the opinions of Mr. D.'s treating therapist, Dr. Haines, in part due to her assessment of inconsistencies between his opinion, his treatment notes, and the medical evidence of record. **AR 2125.** The ALJ did not consider the opinions of treating physician Dr. Pofcher.

Based upon her consideration of this evidence, the ALJ found that, prior to May 1, 2018, Jorge D. had the RFC to perform light work allowing for no climbing ladders, ropes, and scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and no exposure to hazards such as unprotected heights and moving mechanical parts. **AR 2126.** The ALJ considered Jorge D.'s past relevant work as a construction worker and concluded that he is unable to perform this work in light of his RFC. **AR 2128.**

Finally, the ALJ accounted for Jorge D.'s recent entrance into a higher age category by concluding that, beginning on November 1, 2018, considering Mr. D.'s age, education, work experience, and RDC, there are no jobs that exist in significant numbers in the national economy that he could perform. **AR 2129.**

As such, the ALJ concluded that Jorge D. was not disabled prior to November 1, 2018, but became disabled on that date and has continued to be disabled through the date of her decision. **AR 2129.**

**STANDARD OF REVIEW**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that her "impairments are of such severity that [s]he is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the Court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). Substantial evidence is

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In its deliberations, a court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied."  *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## DISCUSSION

## I. The ALJ's Evaluation of Medical Evidence

Jorge D. first submits that the ALJ erred by failing to consider opinion and medical evidence from his 2012 SSI Applications. **ECF 9 at 4**. This argument lacks merit. Under 20 CFR §§ 416.335 and 416.912(b)(1), an ALJ is required to develop a claimant's complete medical history for at least 12 months prior to the application's date of filing unless "there was reason to believe development of an earlier period was necessary." Here, medical evidence from Mr. D.'s 2012 Application is from over a year prior to the May 2015 Application, and there is no indication from the record that the older information is necessary to this adjudication. While the Appeals Council remanded this case in order for the ALJ to proffer evidence from the 2012 Application to Plaintiff's counsel, Plaintiff's counsel attested at the time of the November 2018 hearing that the amended record "does not contain

new and material evidence related to the time period on or before the date of the last decision." **AR 2112.**

Mr. D. contends that the 2012 Application medical evidence should have been evaluated because it still tends to support the opinion evidence in his 2015 Application. However, while this evidence may have been relevant to present issues, Mr. D. has not shown that its evaluation was necessary to a just adjudication of his 2015 Application such that the ALJ would have been required to evaluate it. The ALJ did not commit error on this ground.

Jorge D. also submits that the ALJ erred by failing to evaluate medical evidence associated with his 2015 Application: specifically, Dr. Karen Huyck's November 2016 opinion, Mr. James Carew, LICSW's two 2015 opinions, Dr. Kimberly Liebow's treatment records from March to June 2013, and Dr. Edward Smith's opinions from August 2012.

Dr. Liebow and Dr. Smith's medical opinions are both from over a year prior to Mr. D.'s May 2015 SSI application date, and Mr. D. has not shown that this evidence was necessary to review his current claim. The opinions of Dr. Huyck and Mr. Carew do fall within the relevant term. Notably, however, "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). As such, the ALJ did not

necessarily commit an error because she did not discuss this opinion evidence in her opinion, as she may have still accounted for them in her analysis. The Court addresses the issue of whether the ALJ evaluated these opinions in a manner consistent with substantial evidence in the following section.

## II. The ALJ's Weighing of Medical Evidence.

Next, Jorge D. contends that the ALJ failed to correctly weigh the opinion evidence. Plaintiff prevails on this argument. The ALJ relied almost exclusively upon the conclusions of non-examining experts Dr. Leslie Abramson and Dr. Geoffrey Knisely, with some weight given to the opinions of Dr. Alexandra Dulude. She gave lesser weight to the functional capacity assessment carried out by Gregory Morneau, OT, and no weight to the opinions of Dr. Tony Blofson and Dr. Karen Huyck. In making a determination of Jorge D.'s mental health, the ALJ relied almost exclusively upon the conclusions of non-examining consultants Dr. Joseph Patalano, Ph.D. and Dr. Howard Goldberg, Ph.D., giving lesser weight to Jorge D.'s treating psychiatrist, Dr. Jeffrey Haines, and no apparent weight to Jorge D.'s treating psychotherapist, James Carew, LISCW.

### A.) Assessment of Mental Health RFC

Mr. Patalano and Mr. Goldberg's opinions, based solely upon a review of medical records, were not consistent with the opinions of mental health providers who either met with or

treated Mr. D. in the years prior to the hearing. Dr. Haines had served as Jorge D.'s treating psychiatrist since November 2012, having had numerous sessions together over the years. In his 2017 opinion, Dr. Haines indicated that Jorge D.'s anxiety and depression met the criteria of Social Security listings 12.04 and 12.06. **AR 2052-56.** He determined that Jorge D. faced extreme difficulties in maintaining social functioning, along with marked to extreme difficulties in maintaining concentration, persistence, and pace. **AR 2052-56.**

The ALJ downgraded the impact of Dr. Haines's opinions based on an evaluation that it was inconsistent with the "objective medical evidence in the record and not well supported" and inconsistent with Dr. Haines' treatment notes. **AR 2125.** The ALJ came to this conclusion on account of the fact that Dr. Haines' treatment notes report that Jorge D. presented with normal mental status exams, normal speech, logical thoughts, good insight, and euthymic affect at his appointments. **AR 2125.** However, Jorge D.'s alert and cogent comportment during a psychiatry appointment with an established care provider is not inconsistent with severe psychiatric difficulty in other situations; it is possible for a claimant to appear normal at a medical appointment while suffering from serious mental illness. The ALJ also based her conclusion on record evidence that Jorge D. was capable of many daily activities, inferring that this

rendered Dr. Haines' determination of extreme limitations in social functioning, concentration, persistence, and pace untenable. **AR 2125.** Once again, however, a medical finding of serious anxiety need not translate to complete debilitation in order to pass muster.

Moreover, Dr. Haines' treatment notes are not inconsistent with his opinions. Rather, they have repeatedly indicated that Jorge D. suffered from longstanding and significant anxiety, panic disorder with agoraphobia, and depression in a manner that supports his 2017 medical opinion. *See* **AR 1573-75, 1590, 1788, 1829-30, 1954, 1957-59, 1962**. Moreover, Dr. Haines' 2017 opinion was also consistent with symptoms found by examiners Dr. Korgeski, **AR 2058-59, 2063,** Mr. Rodrigue, **AR 1554-71,** Mr. Carew, **AR 1823-25, 1882-85,** and Mr. Price, **AR 1782-83**.

The ALJ failed to properly address Dr. Haines' treatment relationship with the record, the fact that his opinions were not at odds with other information in the record, or his expertise as a psychologist. When compared to a review of documents by Dr. Palatano and Dr. Goldberg, Dr. Haines' ongoing relationship with Jorge D. was more likely to produce an accurate understanding of the Jorge D.'s capabilities. There is no dispute as to Dr. Haines' professional qualifications, and the Court finds that the ALJ failed to give his opinions appropriate weight.

The ALJ also failed to evaluate James Carew's opinions and to give them appropriate weight. Again, this provider had a professional relationship with Jorge D. over a period of many months, and formed his opinions based upon that relationship. The ALJ did not evaluate James Carew's opinion at all in the course of her opinion. Defense counsel argues that this was because Carew is not considered an "acceptable medical source" under the federal regulations (20 C.F.R. 404.1513(d)).

Social Security Rule 06-03 provides that "medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p; Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 71 Fed. Reg. 45593 (Aug. 9, 2006) (hereafter SSR 06-03).

In deciding how much weight to grant such an opinion, the Commissioner must consider the following factors: how long the

source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s), and any other factors that tend to support or refute the opinion. SSR 06-03; see *Reynard v. Colvin*, 220 F. Supp. 3d 529, 537-38 (D. Vt. 2016).

Here, the ALJ failed to engage in this analysis at all. Jorge D. was in regular therapy with Mr. Carew throughout 2015: he had attended thirty eight sessions with him between March and November. During those sessions, Jorge D. shared that he suffered from overwhelming depression and anxiety which limited his ability to leave home. Mr. Carew assigned the patient DSM-IV diagnoses on Axis I of Agoraphobia and PTSD. Accordingly, Carew's conclusions about Jorge D.'s mental health limitations were consistent with Dr. Haines' evaluation. For these reasons, the ALJ's weighing of Mr. Carew's opinion is not consistent with substantial evidence.

### B.) Assessment of Physical RFC

Jorge D. submits that the ALJ improperly weighed the record medical opinion evidence in making an RFC determination. First, he argues that the ALJ's failure to evaluate Dr. Karen Huyck's opinion was reversible error. This argument lacks merit, as the

Plaintiff has not shown that an evaluation of this opinion was necessary to the case. As the Commissioner argues, Dr. Huyck's treatment notes were a "review of [Mr. D.'s] RFC performed on 8/4/2015" by Mr. Gregory Morneau, whose report the ALJ reviewed at length in her opinion. The ALJ may have reasonably refrained from discussing Dr. Huyck's opinion to avoid duplicative analysis. As such, the ALJ did not err in leaving out an analysis of Dr. Huyc's opinion, as its underlying contents were still addressed in the opinion.

Next, Mr. D. contends that the ALJ erred by giving no weight to Dr. Dulude's statement that Mr. D. "may meet a listing for depression and posttraumatic stress disorder" on account of the fact that this issue was outside of her area of expertise. This argument also lacks merit. The ALJ's decision to discount Dr. Dulude's statement was based in a reasonable analysis that passes muster under the substantial evidence standard.

Jorge D. also proffers that the ALJ erred by giving no weight to treating primary care physician Dr. Blofson's certificate of disability. The Commissioner discounted the certificate by citing to 20 CFR § 416.1527(d)(1), which states that an ALJ need not give any "special significance" to an opinion on issues reserved to the Commissioner. Dr. Blofson's opinion that Jorge D. was disabled is a conclusory statement on a matter reserved to the Commissioner, and hence the ALJ is not

obligated to give it any special weight. Moreover, as the
Commissioner argues, the ALJ's opinion appears to be based in
some review of Dr. Blofson's overall records, even if these
records are not specifically cited. As such, the ALJ did not
commit reversible error by allocating no weight to Dr. Blofson's
conclusory statement, as there is no indication that the ALJ
failed to evaluate his opinion entirely in her analysis.

However, the ALJ did err by according lesser weight to Mr.
Greg Morneau's opinion on account of her assessment that (1) it
was not the result of objective testing and (2) that Mr. Morneau
is not an acceptable medical source according to program rules.
The ALJ also gave Mr. Morneau's findings "some weight" for the
period on and after May 1, 2018 and less weight in the period
prior without giving "good reasons" for this inconsistency.

First of all, Mr. Morneau's treatment opinion was based in
medical evidence: Mr. Morneau facilitated a residual functional
capacity assessment in which Jorge D. was asked to engage in a
number of actions while Mr. Morneau assessed his capabilities.
Mr. Morneau's conclusions that Jorge D. had a sitting tolerance
of thirty-three minutes, a standing capacity of only twenty
minutes, and fine motor coordination in the 1st percentile were
based in his observations of the patient over the course of a
musculoskeletal capacity test.

Moreover, pursuant to 20 CFR §§ 416.902 and 416.920(c) and SSR 06-03, Mr. Morneau's opinion must be reviewed under the same standard as that of an "acceptable medical source." ("In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to: medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . .)" SSR 06-03.

Notably, Mr. Morneau's observations were consistent with Dr. Haines' and Mr. Carew's observations of Jorge D.'s limited mobility. Moreover, ALJ's willingness to accord Mr. Morneau's opinion more significant weight after May 1, 2018 undermines the strength of her negative evaluation of this evidence due to the quality and nature of the opinion. As such, the ALJ did not provide "good reasons" for discounting Mr. Morneau's opinion in her analysis prior to May 1, 2019, which we reverse and remand.

Finally, the ALJ also erred in giving significant persuasive weight to Dr. Abramson and Dr. Knisely in light of the fact that they did not review the complete record. Notably, these reviewers did not review any medical records after

December 2015, including the opinions of Dr. Haines and more recent records from the Brattleboro Retreat, which make up a significant portion of relevant evidence. Given this major limitation in their review, the ALJ's allotment of "significant weight" to their opinions is not supported by substantial evidence. This matter must therefore be remanded for proper consideration of the evidence.

III. Review of Listing Criteria, RFC Assessments, Finding of No Disability Prior to November 1, 2018, and Evaluation of Plaintiffs' Statements of Symptoms

Jorge D. also argues that the ALJ erred in reviewing the criteria of Listings 12.04 and 12.06, in making conclusions regarding his RFC, in making a determination of no disability prior to an onset date of November 1, 2018, and in finding that his statements concerning the intensity, persistence, and limiting effect of his symptoms were not fully supported prior to November 1, 2018. In light of the errors in weighing record evidence noted above, the ALJ's evaluation of all four of these questions must be recalibrated in order to accord with substantial evidence. These questions must therefore be remanded for reconsideration after a proper consideration of the evidence.

**CONCLUSION**

In sum, the ALJ failed to give appropriate weight to the opinions of Dr. Haines, Mr. James Carew, Mr. Gregory Morneau,

Dr. Abramson, and Dr. Knisely. The Court therefore finds that the ALJ's conclusions were not supported by substantial evidence. This matter must therefore be remanded for proper consideration of the evidence.

For the foregoing reasons, Plaintiff's motion to remand is **granted**, the Commissioner's motion to affirm is **denied**, and the case is **remanded** for reconsideration of the evidence.

DATED at Burlington, in the District of Vermont, this 27th day of March, 2020.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge